## VAN VALKENBURGH VS. THE CITY OF MILWAUKEE.

### *Dedication of land to public use for streets.*

1. Commissioners appointed in a partition suit to make partition of certain land in a city, platted the same into blocks and lots, and made partition according to the plat; and such partition was confirmed by the court, and the lots sold according to such plat by the persons to whom they were assigned. The boundary lines of lots and blocks upon said plat were in black ink, and at a certain distance on each side of some of the boundaries of blocks were *red* lines, which were in fact (as appeared from such plat), continuations of the lines of streets laid out upon *adjoining* platted grounds. The memoranda made by the commissioners upon the plat, state that "the black lines represent the boundaries of blocks and lots; the red lines are imaginary lines, showing the form and dimensions of the lots and blocks as they would appear if the streets of the town adjoining were extended through the tract." *Held*, that the plat does not evidence a dedication to the public, for streets, of the lands included within the red lines.

2. No dedication being shown, a city ordinance subsequent to the plat, establishing the grade of a street (called Lake street) between two of such red lines, does not show any title in the public to said lands.

3. On appeal to the circuit court from an assessment of benefits and damages to appellant's lots in said blocks, it was necessary for the court to determine how much land appellant owned therein, and the extent of his interest in said land; and therefore to determine whether any part of the land of which he held the fee was a legal highway, he having stated, in his notice of appeal, that he would litigate that question.

4. The court, on trial of such appeal, having held that there was a valid dedication of the land claimed as constituting Lake street, by virtue of such partition proceeding, and plat, this error would affect, to appellant's injury, the amount of damages awarded him, and is ground for reversal here.

APPEAL from the Circuit Court for *Milwaukee* County.

Pursuant to the provisions of chapter 141, Private and Local Laws, 1868, the common council of Milwaukee established a park, or public grounds within the limits therein prescribed, and the damages and benefits to the lots of individuals, appro-

priated for that purpose, were assessed by the board of public works, which board is charged by law with that duty. Such assessments were afterwards confirmed by the common council.

In this assessment the board of public works made the following entry: "A piece of land known as Lake street, from the south line of Oneida street to Division street; also Division street from the west line of Lake street to Lake Michigan, supposed to be public property."

The appellant was the owner of several lots thus appropriated for the park, which lots were included in the assessment of damages. He was also the owner of another lot, only a portion of which was so appropriated, and the latter lot was included in the assessment of benefits.

The strip of land referred to in the assessment as Lake street, extends across, and includes a portion of each of the lots so owned by the appellant.

The appellant duly appealed to the circuit court from such assessment of damages and benefits in respect to his lots, and in and by his notice of appeal, he denied "that the city of Milwaukee had or has any right or title to that portion of the strip of land which is sometimes called Lake street," which lies adjacent to, and is a part of his said lots, and gave notice that the title thereof would be tried as one of the issues involved in the appeal.

On the trial of such appeal in the circuit court, it appeared that as early as the year 1842, an action for the partition of fractional lot No. one, in section 28, township seven north, range 22 east, (of which fractional lot the lots of the appellant are a portion,) was pending in the district court for Milwaukee county, and the court appointed commissioners to make partition thereof between the owners. In the discharge of that duty the commissioners platted the whole of the fractional lot into blocks, and numbered the same, and subdivided all but two of said blocks into lots, which they also numbered. These blocks and lots are indicated on the plat by black lines, the

dimensions of each, (with perhaps a few exceptions,) are given upon the plat, and such blocks and lots include the whole of the area of the fractional lot. It seems that the lands adjoining the fractional lot on three sides, had been previously platted into blocks, lots and streets, and sufficient of these plats are copied on that of the commissioners to show the relative positon of the latter thereto. Lake Michigan forms the easterly boundary of such fractional lot.

On the commissioners' plat are red lines drawn parallel to, and forty feet distant from all lines thereon between blocks, and with one or perhaps two exceptions, they are substantially continuations of the lines of streets upon the adjoining plats across that of the commissioners. Upon the latter plat we find the following explanations: "The black lines represent the boundaries of blocks and lots. The red lines are imaginary lines showing the form and dimensions of the lots and blocks as they would appear if the streets of the town adjoining were extended through the tract." The strip known as Lake street is included between two of these red lines. The commissioners made partition according to their plat, the district court confirmed the same, and the parties to whom lots were assigned by such partition, sold and conveyed the same to divers persons, according to the plat. Indeed, the validity of the plat seems to have never been disputed.

The respondent gave in evidence an ordinance of the city, passed in 1853, establishing the grade of several contiguous streets, including the strip of land called Lake street, but offered no other evidence of the existence of Lake street, or of any right or title in itself to the strip of land within said red lines.

The court refused to instruct the jury, as requested by the appellant, that the partition plat and report with the whole partition proceedings, do not constitute in law a dedication of any part as streets, but held, substantially, that the same constituted a valid dedication of the lands included within the red lines to the public use as streets or alleys.

The jury assessed the appellant's damages and benefits at the same sums at which they had been previously assessed by the board of public works, and they found specially that the strip known as Lake Street is a public highway. The owner of the lots appeals to this court from the judgment entered upon the verdict.

*Waldo & Van Valkenburgh*, for appellant.

*E. G. Ryan*, City Attorney, for respondent.

LYON J. I. For the purpose of making the assessments of damages and benefits, it was necessary that the jury should ascertain the value of the appellant's lots appropriated for the purposes of the park, or affected by the improvement. The existence or non-existence of a public highway or street over the strip of land known as Lake street, was certainly an element to be considered in determining such value. The lots may be more valuable if the public has no easement upon them, than they would be did the easement exist. It seems very clear, therefore, that the question as to whether such strip is or is not a public street, was a proper one for adjudication by the circuit court on the trial of the appeal from the assessments, made by the board of public works. Had the board merely assessed the damages and benefits to the appellant's lots, without making any mention of Lake street, and had section 5 of the act of 1868 been entirely omitted from the act, we should still be of the opinion that the question was properly before the circuit court for adjudication on the trial of the appeal from the assessments of damages and benefits taken under section 3 of the same act. The appellant must show title to the lands affected by the appeal, or to some part thereof, or his appeal should be dismissed, and it seems inevitable that he must be permitted to show the nature and extent of his estate therein, for upon these may depend, in a great measure, the amount which he is entitled to recover. If these views are correct, it is quite unnecessary to pass upon the effect of that portion

of this appeal which is evidently predicated upon section 5. We prefer to postpone the determination of this question until we decide the case of *Emmons v. The City of Milwaukee*, argued at the present term, in which case it is understood the question is of great importance.

II. If the strip of land known as Lake street is a public highway or street, it is such because the proceedings in the partition suit in 1842, the subsequent recognition of the validity of the partition plat by the several owners of the lots under the decree in the partition suit, and the city ordinance of 1853, establishing the grade of Lake street, constitute a valid dedication thereof to the public use; for there is no proof that the strip was ever used by the public as a street, or that any other acts have been done which tend to show a dedication thereof.

The facts that, after the partition was made, the owners conveyed lots or blocks assigned to them respectively by the decree of partition, according to the commissioner's plat, and that the grade of Lake street was established by the ordinance of 1853, would seem to be of no importance, unless such plat is, on its face, a dedication of the strip of land known as Lake street to the public use. The acts of the owners may be important in determining the validity of the plat, and the ordinance may tend to show an acceptance by the public of the dedication, if the plat operates as a dedication. But if it does not so operate, it is not perceived how either of these facts can be material. Hence, the controlling question to be examined is, does the partition plat purport, on its face, to dedicate to the public use the strip of land included between the red lines thereon, and known as Lake street? Or, stating the question in another form, does the plat show, or tend to show, that the commissioners intended thereby to make such dedication?

The plat certainly contains no evidence of such intent, except such as is furnished by the presence of the red lines upon it. Strike these out, and there is nothing left upon which to

found a claim of dedication. What then is the significance of those lines? It is true that the most of them are drawn where the lines of streets would be located, were the streets in the adjoining tracts extended across the fractional lot.

It is also true that the partition plat shows the relative locations of such streets in the adjoining tracts, to such plat, and the names of those streets. It may also be conceded to be necessary that the public should have the right of way over the lands included between the red lines. Were this all that is known of the intentions of the commissioners, it is quite possible that, on the authority of *Ely v. Bates*, 5 Wis., 467, we might be justified in holding that there was a dedication, although in that case the notes of survey indorsed on the plat expressly recognized the *locus in quo* as a public street.

But the partition plat furnishes further information concerning the intentions of the commissioners in this respect.

1. The whole tract is included in the lots and blocks; the lines of lots invariably cut the red lines and extend to the black lines, which are invariably in the center of the strips between the red lines, except that the west line of the plat is not precisely parallel to the strip through which it runs. In this particular this case is believed to differ from all of the cases decided by this court, which are cited by the learned counsel for the respondent.

2. The explanations upon the plat expressly state the object and purpose of the red lines. The commissioners there inform us that these are *imaginary* lines drawn there for the purpose of " showing the form and dimensions of the lots and blocks as they *would* appear if the streets of the town adjoining were extended through the tract." It seems very clear that this language, taken in connection with the balance of the plat, negatives any intent on the part of the commissioners to dedicate streets. It is possible that they doubted their power to do so, but however that may be, they doubtless believed that, in case public streets should be extended through the tract thereafter,

such streets would necessarily be located to correspond with those in the adjoining town, and so they drew the red lines to show how the lots and blocks on the plat would be affected thereby in case such streets should afterwards be established. The commissioners speak of these red lines as being "*imaginary*" lines. It is fair and reasonable to infer that by this is meant that they denote the lines of *imaginary* streets, or streets which might afterwards be established, but which were not intended to be established or dedicated by the plat.

The conclusion which we have reached is, that the testimony fails entirely to show that the strip of land known as Lake street, across the lots of the appellant, is a public street, and inasmuch as the charge of the court and the assessments of damages, and benefits by the jury, are based upon the opposite hypothesis which may have affected the verdict, adversely to the appellant, there must be a new trial.

*By the Court.*— Judgment reversed and a *venire de novo* awarded.